**THE HONORABLE JUDGE JOHN CHUN**

**NOTED FOR FRIDAY JUNE 24, 2022**

**ORAL ARGUMENT REQUESTED**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GIZACHEW WONDIE,<br><br>                Plaintiff,<br><br>v.<br><br>KING COUNTY, et al.,<br><br>                Defendant. | Case No. C21-1623RSL<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT KING COUNTY'S FRCP 12(c) MOTION TO DISMISS<br>**ORAL ARGUMENT REQUESTED** |

## I.    RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The Plaintiff in this case ("Mr. Wondie") respectfully opposes King County's ("Defendant") Motion to Dismiss his *Monell* claim. In the alternative, he requests that if the Court dismisses the *Monell* claim, the dismissal is without prejudice and with leave to amend the Complaint as appropriate.

## II.    STATEMENT OF FACTS

### *A. Mr. Wondie filed a Monell claim against Defendant.*

Mr. Wondie filed his Complaint on December 3, 2021. *Dkt 1*. His Complaint alleges civil rights violations pursuant to 28 U.S.C. § 1983 against retired King

PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(C) MOTION TO DISMISS-1

County Sheriff Detective Kathleen Decker, terminated King County Sheriff Deputy George Alvarez, and King County.[1] In his Complaint, Mr. Wondie alleges:

> 5.5 Plaintiff was injured by the unconstitutional policies, customs and procedures implemented and followed by the King County Sheriff's Department in violation of his civil rights as provided by the 4th, 8th and 14th Amendments to the Constitution of the United States and King County is liable under 42 U.S.C. § 1983 and§ 1988.
>
> 5.6 Defendants King County and King County Sheriff's Department knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiffs rights, failed to instruct, supervise, train, control and/or discipline on a continuing basis Defendant officers and other officers in their duty.
>
> 5.7 Defendants King County and King County Sheriff's Department had power to prevent the commission of the aforesaid wrongs, could have done so by reasonable diligence, but failed to do so with deliberate indifference and callous disregard of the rights of Plaintiff.
>
> 5.8 As a direct and proximate cause of defendants' violation of Plaintiffs rights, Plaintiff has suffered economic and emotional damages in amounts to be proven at trial.

In his Complaint, Mr. Wondie also alleges:

> 4.6 At some point while the firearm was in SPD's possession, a law enforcement officer test fired the weapon. A casing was taken from the test firing and the results were entered into the National Integrated Ballistic Integration Network ("NIBIN") which is maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") NIBIN queries can provide law enforcement officers with linkages to shots-fired incidents. Law enforcement can submit a shell casing to NIBIN to see if it matches the result of any other other shell casing in the system. If done properly, it is possible to determine if the shell casing found at a crime scene matches a particular gun.
>
> 4.7 Detective Decker found a shell casing at the scene of the Amarah Riley homicide and submitted the casing to the Washington State Patrol Crime Lab ("WSP Lab"). The casing was run through a NIBIN computer. Detective Decker received an email indicating the shells from the murder scene appeared to correspond with a shell fired from the gun belonging to Mr. Wondie when it was

---

[1] The § 1983 claim against King County is also known as a *Monell* claim, *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

in SPD's possession. Based on this information, her investigation turned to Mr. Wondie.

4.8    Under forensic protocols that existed when Detective Decker applied for the warrant, WSP must perform a microscopic confirmation of any casings before NIBIN results can be used for warrants, arrests, or at trial, and a formal report must be requested.

4.9    Prior to applying for the search warrant, Detective Decker had been provided with information that "NIBIN is a screening tool. What you need is to have the lead confirmed by the WSP Crime Lab." Detective Decker testified that she knew that she needed to submit her NIBIN lead to the WSP Lab for verification to use the evidence, but indicated she thought that requirement only applied to cases going to trial. A lead resulting from a NIBIM query is distinguishable from confirmation that a shell casing is related to particular firearm. Detective Decker never sought confirmation that the shell casing she submitted was related to a gun previously owned by Mr. Wondie. This is problematic because NIBIN queries can result in false positive results and further forensic work is necessary to eliminate the potential for a false positive. Hence, to use an NIBIN lead as evidence, additional microscopic testing must be performed by the WSP crime lab. Detective Decker disregarded this protocol.

4.10    In her affidavit supporting the search warrant, Detective Decker testified that "the test results link conclusively the shell casings collected from the Amarah Riley murder scene on September 19, 2018 and the Gizachew Wondie Smith and Wesson .40 caliber firearm described above." Detective Decker also testified in her affidavit that "Forensic examination has established that shell casings recovered from the scene matched a gun known to be owned by Gizachew Wondie." At the motion hearing, Detective Decker acknowledged this statement was incorrect. It is undisputable that Detective Decker misrepresented the evidentiary value of NIBIN query in her affidavit and used it inappropriately. This was the primary evidence Detective Decker used to link Mr. Wondie to the gun she believed was associated with Ms. Riley's murder.

4.11    Detective Decker believed that an individual that employed Ms. Riley may have been involved in Ms. Riley's death and that gang violence may have played a part in her death.

4.12    Prior to applying for the warrant, Detective Decker began looking at social media relating to the homicide case. She looked at social media posts of a Somalian music group ("Group A") that law enforcement suspected had gang involvement possibly tied to Ms. Riley's death. She asked a federal agent familiar with Group A if he had ever heard of Gizachew Wondie. The agent indicated he had never heard the name. Detective Decker also received an organizational chart of Group A from SPD. Mr. Wondie was not on the organizational chart. Three different SPD officers indicated they did not know of any association between

Mr. Wondie and Group A. There was no evidence of a connection between Mr. Wondie and Group A. Detective Decker presented information in her affidavit that Group A was potentially associated with the murder of Ms. Riley.

4.13    Detective Decker concluded that Mr. Wondie was pictured in a Group A social media post from September 29, 2018 "holding what appears to be a semi-automatic firearm." Detective Decker had access to multiple photos of Mr. Wondie. Based on her individual review of these photos, and a comparison with a photo from a Group A social media post, she identified a person in the Group A photo as Mr. Wondie. She submitted the photo with her affidavit.

4.14    Detective Decker testified at the motion hearing that witnesses are less accurate at identifying people of a different race than their own. She also testified that she had access to a gang identification database known as GETEM which she could have sent a blast out to asking if Mr. Wondie was the person pictured in the Group A picture. She did not use the resource.

4.15    A defense investigator for Mr. Wondie reviewed the photo found in the Group A post and concluded within 90 minutes of research the person pictured in the Group A photo was 100 percent not Mr. Wondie and instead 100% another individual he had identified from other social media and news publications.

4.16    In her affidavit, Detective Decker asserted that Mr. Wondie was the same person pictured in the Group A photo holding a semi-automatic firearm based on her own identification process.

4.17    In her affidavit, Detective Decker indicated Mr. Wondie had a propensity for violence.

4.18    During her testimony at the Motion hearing, Detective Decker was unable to present any factual basis to support this allegation or to reconcile her assertion with her previous assertion made in the request for SWAT that she did not believe Mr. Wondie was violent.

Neither Detective Decker nor Detective Alvarez were disciplined for their involvement in Mr. Wondie's case. *Fiorito Declaration,* Ex. A.

### III. ISSUES PRESENTED

1.    The Court should deny Defendant's Motion to Dismiss Mr. Wondie's *Monell* claim.

2. If the Court dismisses Mr. Wondie's *Monell* claim, it should it dismiss without prejudice and grant Mr. Wondie leave to amend the Complaint.

## IV. EVIDENCE RELIED UPON

Plaintiff relies upon the pleadings and files already on record, and the Declaration of Dan N. Fiorito III and supporting exhibits.,

## V. ARGUMENT AND AUTHORITIES

### A. The court should deny Defendant's Motion to Dismiss because Mr. Wondie's Complaint sufficiently alleges facts from which to infer municipal liability under Monell.

In response to Defendant's Rule 12(c) motion, Mr. Wondie has met his obligation to provide the grounds of his entitlement to relief because he has provided more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." S*ee Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *see also Weber v. Department of Veterans Affairs,* 521 F.3d 1061, 1065 (9th Cir.2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 556 U.S. 662, 678 (U.S., 2009)

When evaluating a Complaint to determine the presence of a plausible claim for relief, the reviewing court must engage in a context specific task and on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id*. at 1949–50. "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962 (9th Cir.2009).

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Id*. at 688-89 (quoting *Mack v. South Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)). Specifically, a court may take judicial notice of a fact "not subject to reasonable dispute" because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

*Monell* liability against a municipality may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local

government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Price v. Sery,* 513 F.3d 962, 966 (9th Cir.2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir.2004); *Ulrich,* 308 F.3d at 984–85; *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1996).

A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins,* 531 F.3d 824, 834 (9th Cir.2008); *Long,* 442 F.3d at 1185. A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Los Angeles Police Protective League v. Gates,* 907 F.2d 879, 890 (9th Cir.1990); *see also Bouman v. Block,* 940 F.2d 1211, 1231–32 (9th Cir.1991). Stated differently, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." *Trevino,* 99 F.3d at 918; *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir.1992). "Liability for improper custom may not be

predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino,* 99 F.3d at 918; *see also McDade v. West,* 223 F.3d 1135, 1141 (9th Cir.2000); *Thompson v. Los Angeles,* 885 F.2d 1439, 1443–44 (9th Cir.1989). After proving one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *See Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir.2008); *Trevino,* 99 F.3d at 918.

Additionally, a municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Long,* 442 F.3d at 1186; *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long,* 442 F.3d at 1186. A plaintiff alleging a failure to train claim must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact;" and (3) his constitutional

injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir.2007); *Lee,* 250 F.3d at 681. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton,* 489 U.S. at 389, 109 S.Ct. 1197; *Long v. City & County of Honolulu,* 511 F.3d 901, 907 (9th Cir.2007).

A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390, 109 S.Ct. 1197; *Lee,* 250 F.3d at 682. A "pattern of tortious conduct," despite the existence of a training program, or "highly predictable" constitutional violations due to a "failure to equip law enforcement officers with specific tools to handle recurring situations," are circumstances in which liability for failure to train may be imposed. *See Board of County Comm'rs v. Brown,* 520 U.S. 397, 407–10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Long,* 442 F.3d at 1186–87.

### 1. Detective Decker's decision to submit a search warrant that presented factually incorrect information or omitted exculpatory evidence is a custom accepted by King County for its' detectives.

In the present case, King County Detective Kathleen Decker testified under oath that she knew that she needed to submit her NIBIN lead to the WSP Lab for verification to use the evidence, but indicated she thought that requirement only applied to cases going to trial. In her affidavit supporting the search warrant, Detective Decker testified that "the test results link conclusively the shell casings collected from the Amarah Riley murder scene on September 19, 2018 and the Gizachew Wondie Smith and Wesson .40 caliber firearm described above." Detective Decker also testified in her affidavit that "Forensic examination has established that shell casings recovered from the scene matched a gun known to be owned by Gizachew Wondie." At the motion hearing, Detective Decker acknowledged this statement was incorrect.

It is undisputable that Detective Decker misrepresented the evidentiary value of the NIBIN query in her affidavit and used it inappropriately. This was the primary evidence Detective Decker used to link Mr. Wondie to the gun she believed was associated with Ms. Riley's murder. Detective Decker testified she thought that NIBIN leads only needed to be verified by the WSP lab if the case was going to trial. In other words, she felt it was perfectly acceptable to knowingly present

inaccurate information (conclusive ballistics match) to a judge to get a warrant.[2] Furthermore, Detective Decker portrayed Mr. Wondie as a violent African American gang member when she had no such evidence to support the inference.

Detective Decker misrepresented facts to the Court to obtain a warrant. Detective Decker was not subjected to discipline for her actions giving rise to the ratification of her actions by the Defendant. Thus, even based on the Complaint, genuine issues of material fact as to: (1) whether Defendant had a custom surrounding detectives' accepted use of judicial deception that was so settled as to have the force of law; (2) whether the Defendant's training regimen and practices gave rise to culture that encouraged, permitted, or acquiesced to detectives' use of judicial deception; and (3) whether the Sheriff's alleged failure to discipline rose to the level of ratification. It is entirely reasonable to infer that King County failed to train Detective Decker and other detectives regarding the Fourth Amendment and that other detectives mislead judges in search warrant affidavits through judicial deception with approval from the Defendant.

---

[2] After Mr. Wondie's successful *Franks* Motion at his criminal trial, the Court found that Detective Decker recklessly provided false information and omitted information from the affidavit that resulted in misleading information being communicated to Judge Richardson. *Fiorito Declaration, Ex. B.* Mr. Wondie asks the Court to take judicial notice of the Court's Order.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(C) MOTION TO DISMISS-11

THE LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVENUE N., SUITE 201
SEATTLE, WA 98109
206-299-1582

### 2. Defendant is aware that other detectives have engaged in judicial deception.

Evidence exists within the public domain that King County Sheriff's Detectives have been accused of making false statements and omitting information in search warrant affidavits in pursuit of a homicide investigation. For example, in *Wheeler v. Broggi*, et al., C19-1410-JCC-MAT, the Plaintiff, a black male, alleged municipal liability because King County Sheriff Detectives made false statements and omitted important facts from a search warrant affidavit that would have undermined the murder allegations against him. Magistrate Judge Theiler found there was evidence the detectives filed misleading or incomplete sworn statements to obtain a warrant. Magistrate Judge also found that while plaintiff "provides minimal information regarding the allegation of municipal liability through a theory of ratification," there was enough evidence of municipal liability to recommend denial of the defendant's motion. *Fiorito Declaration, Ex. C., p. 24.* In the alternative, she recommended dismissal without prejudice and with leave to file an amended complaint. *Id.*

Mr. Wondie asks that the Court take judicial notice of *Wheeler v. Broggi* and the allegations made against King County detectives Eleanor Broggi and Matthew Olmstead as evidence that judicial deception is a custom accepted within King County. The fact that detectives Decker, Broggi, and Olmstead were not

PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(C) MOTION TO DISMISS-12

THE LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVENUE N., SUITE 201
SEATTLE, WA 98109
206-299-1582

disciplined for their deception is further evidence that such behavior is tolerated and accepted by King County as customary. Also, the fact that multiple King County detectives have purportedly engaged in judicial deception is evidence that the Defendant has failed to train its homicide detectives regarding the Fourth Amendment. Such failure to train amounts to deliberate indifference to the rights of persons with whom the detectives come into contact, particularly when the result of such indifference is incarceration of indigent persons of color.

Defendant alleges in its motion "nowhere does Wondie allege facts giving rise to the plausible inference that the County's existing training and supervisory programs are deficient." Clearly, this assertion fails, especially when viewed in relation to Defendant's failure to discipline Detective Decker after she clearly violated Mr. Wondie's constitutional rights and in light of similar claims made against other detectives that were settled by Defendant in *Wheeler v. Broggi*.[3]

### B. If the Court dismisses, the dismissal should be without prejudice and with leave to amend.

If a Rule 12 motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it

---

[3] King County agreed to pay $500,000.00 to settle all claims brought by Mr. Wheeler against Detectives Broggi and Olmstead. Mr. Wondie asks this Court to take judicial notice of this settlement as it was widely reported in the press. King County has been aware of at least three detectives alleged to have engaged in judicial deception against persons of color. *Fiorito Declaration, Ex. D.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S 12(C) MOTION TO DISMISS-13

THE LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVENUE N., SUITE 201
SEATTLE, WA 98109
206-299-1582

determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc). In the present case, discovery is ongoing. If the Court dismisses the *Monell* claim, it should do so without prejudice and grant leave to Mr. Wondie to amend his Complaint.

## VI. CONCLUSION

Mr. Wondie's Complaint alleges facts sufficient to establish Detective Decker acquired a warrant against Mr. Wondie through judicial deception. In fact, the criminal court made this determination. Detective Decker was not disciplined for her conduct demonstrating that King County ratified her action and failed to train her, thus establishing a factual basis to support Mr. Wondie's municipal claim. Also, public records demonstrate at least two other King County detectives have sought warrants through judicial deception against indigent people of color, raising the inference that King County is liable under the custom or policy components of *Monell.* Thus, the Defendant's motion to dismiss the *Monell* claim must be denied. In the alternative, the Court should dismiss the *Monell* claim without prejudice and allow Mr. Wondie leave to amend the Complaint.

Respectfully submitted this 20th day of June 2022.

                                      LAW OFFICE OF DAN N. FIORITO III
                                      By *s/Dan Fiorito III*
                                             Dan Fiorito, III, WSBA No. 34009
                                           dan@danfiorito.com
                                           2470 Westlake Ave. N., Suite 201
                                           Seattle, WA 98109
                                           206-299-1582
                                           *Attorney for Gizachew Wondie*

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated this 20th day of June, 2022.

*/s/ Dan Fiorito*
Dan Fiorito, WSBA No. 34009