UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GIZACHEW WONDIE, a single man<br><br>Plaintiff,<br><br>  v.<br><br><br>KING COUNTY, a political subdivision of the State of Washington; KING COUNTY SHERIFF'S OFFICE, an entity of King County; KATHLEEN DECKER, in her official and individual capacities; GEORGE ALVAREZ, in his official and individual capacities; and JOHN / JANE DOE OFFICERS 1-10, in their official and individual capacities,<br><br>    Defendants. | NO. 2:21-cv-1623<br><br><br>SECOND AMENDED COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

COMES NOW the plaintiff, by and through his attorney of record, **DAN N. FIORITO III**, and alleges as follows:

## I.    INTRODUCTION

Law Office of Dan N. Fiorito III
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

1.1    This cause of action arises pursuant to 42 U.S.C. §1983 and §1988 from the conduct against GIZACHEW WONDIE ("Mr. Wondie" or "Plaintiff") by Kathleen Decker ("Detective Decker"), and King County on December 6, 2018, that violated his Fourth Amendment rights. Mr. Wondie was arrested without probable cause and he was subjected to an unlawful search based on judicial deception.  King County's ratification of the actions outlined in this Amended Complaint demonstrate the existence of policies or customs that promote or allow for: (1) judicial deception; (2) the misuse of ballistics evidence by its' detectives to obtain probable cause; and (3) the use of SWAT resources to make unlawful arrests engineered to coerce confessions.  King County maintained a widespread practice and custom of misusing NIBIN evidence so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused Mr. Wondie to be unlawfully seized and federally prosecuted.

1.2    The publicly available record in cause number CR18-315 ("criminal case") indicates Mr. Wondie's rights were violated when Detective Decker provided testimony in her affidavit for a search warrant of Mr. Wondie's residence and person that demonstrated a deliberate falsehood or reckless disregard for the truth.  Absent the material misrepresentations presented in her affidavit, the warrant would not have issued.  Mr. Wondie's rights were further violated when Mr. Wondie was arrested without probable cause by SWAT team members at the request of Detective Decker to assist with the execution of the search warrant.

1.3    King County Major Crimes Unit ("MCU") Sheriff Detective Kathleen Decker was the lead investigator of the unsolved homicide of Amarah Riley.  She authored a search warrant to search the person and residence of Mr. Wondie for a firearm she believed was involved in the homicide.   The search warrant was executed after judicial approval of the search warrant

LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

application prepared by Detective Decker.  To serve the warrant, Detective Decker asked for, and received, King County Special Weapons and Tactics ("SWAT") assistance.  By her own admission at a pre-trial motion hearing, Detective Decker did not have probable cause to arrest Mr. Wondie.  SWAT's only justification for detaining Mr. Wondie was to execute the search warrant.  Mr. Wondie was seized by SWAT officers and Major Crimes Unit Task Force (MCUTF) officers outside of Seattle Central Community College.  After the seizure, Mr. Alvarez allegedly observed illicit narcotics on Mr. Wondie's person.  Upon a search of his person and vehicle, he was arrested for drug possession.

  1.4  After his unlawful seizure and arrest by SWAT, Mr. Wondie was taken into custody and questioned by Detective Decker and King County Detective John Free at the King County Administration Building.  Mr. Wondie was subsequently indicted in the criminal case based on information gathered subsequent to his unlawful seizure and arrest and prosecuted for nearly three years losing his business and having to drop out of college.

  1.5  During pre-trial proceedings in the criminal case, Mr. Wondie brought motions to suppress evidence acquired from the warrantless search of his person and property.  Also, Mr. Wondie brought a *Franks* Motion alleging that the search warrant authored by Detective Decker included allegations of deliberate falsehood and / or of reckless disregard for the truth.  According to transcripts from the criminal proceeding, Detective Decker wrote in her supporting affidavit that: (1) forensic evidence conclusively established that shell casings from the murder scene she was investigating matched with a gun owned by Mr. Wondie; (2) Mr. Wondie was pictured holding a semi-automatic weapon in a social media post made by an alleged Somalian gang with potential involvement in the Riley homicide investigation; and (3) Mr. Wondie had a propensity for

**LAW OFFICE OF DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

violence. All three of these statements were demonstrably false or otherwise submitted without any factual basis at the time they were made by Detective Decker.

1.6     The Court granted Mr. Wondie's *Franks* Motion and motion to suppress evidence pursuant to a warrantless search. All charges in the criminal matter against Mr. Wondie were dismissed with prejudice.

1.7     All the substantive pleadings, exhibits and orders related to the *Franks* Motion and the motion to suppress were filed under seal. Mr. Wondie had no access to these materials at the time he filed his initial Complaint and moved to have them unsealed. The Court ruled on Mr. Wondie's motion to unseal on December 2, 2021, granting in part his motion. The Court's Orders have since been made available to the public.

1.8     Mr. Wondie will continue to seek access to the sealed materials so that he can pursue his claims against the defendants.

## II.     JURISDICTION AND VENUE

2.1     This Court has jurisdiction over these matters by virtue of 28 U.S.C. 1331, 1343(3) & (4), and 1367.

2.2     Venue properly lies in this Court pursuant to 28 U.S.C. 1391.

## III.     THE PARTIES

3.1.    At all times relevant hereto, Mr. Wondie was a single man residing in Seattle, Washington which is located in King County, Washington.

3.2.    Defendant King County was and is at all times material hereto a political subdivision of the state of Washington. Among other things, the County provides law enforcement services through its Sheriff's Department ("King County Sheriff's Office" or "KCSO"). KCSO

1  is and was at all times material hereto a county agency, providing the vehicle through which King

2  County fulfills its policing function.

3      3.3.    At all times material hereto, Detective Decker was an employee of King County

4  and acted as an agent for KCSO as a detective and was acting in her individual capacity and within

5  her scope of employment and under color of state law at all times relevant herein.   At the time of

6  Mr. Wondie's arrest, Deputy Decker had been with KCSO in a law enforcement capacity for thirty-

7  three years.  At the time of the events alleged in the Complaint, Detective Decker had been a

8  detective for seventeen years.

9      3.4.    George Alvarez has been dismissed from the lawsuit. He was terminated from

10 KCSO and is no longer employed by King County.

## IV.    FACTUAL ALLEGATIONS

**Detective Decker believed Mr. Wondie had possession of the firearm that killed Amarah Riley and investigated him for murder.**

    4.1    Detective Decker found a shell casing at the scene of where a young woman named

Amarah Riley had been murdered.  She submitted the casing to the Washington State Patrol Crime

Lab ("WSP Lab").   The casing was run through the National Integrated Ballistic Integration

Network ("NIBIN") which is maintained by the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF").

    4.2    NIBIN is broadly used to describe the entire automated process for acquisition,

storage, comparison, and review of potentially matching digital images of cartridge cases and

bullets.

**LAW OFFICE OF DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

4.3     Law enforcement, including KCSO, uses NIBIN leads for investigative purposes. *See* Appendix A for materials that explain NIBIN in detail, incorporated by reference to this Second Amended Complaint.

4.4     Using NIBIN in conjunction with firearms examiners, it is possible to determine if the shell casing found at a crime scene links to a particular gun that has been test fired. Cartridge cases or bullets fired under controlled conditions from a firearm recovered by law enforcement are referred to as Test-Fires. These test-fired cartridge cases or bullets thus bear the unique markings left on them by that recovered firearm. These cartridge cases or bullets, in essence, bear the firearm's "mechanical fingerprint." Their digital images are acquired into NIBIN and compared to images of cartridge case or bullet evidence found at prior crime scenes to help determine whether the recovered firearm may have fired the shots at those crime scenes.

4.5     A NIBIN "Lead" is the information given to law enforcement investigators indicating that the same firearm likely fired particular cartridge cases recovered at one or more crime scenes. This lead is based on a correlation review technician finding likely matches after reviewing acquisitions on MATCHPOINT, and at least one and sometimes two other technicians or firearm examiners visually confirming a likely match on MATCHPOINT. MATCHPOINT is the computer station that projects side-by-side cartridge case or bullet acquisitions on a screen for visual comparison by correlation review technicians and firearm examiners.

4.6     A NIBIN "Lead" is not based on microscopic examination by a firearm examiner.

4.7     A NIBIN Lead does not rise to the level of a forensic match.

**Law Office of Dan N. Fiorito III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

4.8     A NIBIN "Hit" is the information given to law enforcement investigators indicating a firearm examiner has concluded, after examination under a comparison microscope, that the same firearm fired particular cartridge cases or bullets recovered at one or more crime scenes.

4.9     It is impossible to represent truthfully and accurately based on a NIBIN lead alone without microscopic confirmation the existence of a forensic match.

4.10    There is no basis to assert that a NIBIN lead can be used as evidence of a forensic match for purposes of establishing probable cause in a search warrant absent microscopic confirmation.

4.11    A lead resulting from a NIBIN query is distinguishable from confirmation that a shell casing is related to particular firearm. A confirmation is also referred to as a match or a hit.

4.12    Detective Decker received an email indicating the shells from the Riley murder scene appeared to correspond with a shell fired from a gun she determined had been previously owned by Mr. Wondie. Based on this information, her investigation turned to Mr. Wondie.

4.13    Under forensic protocols, a firearms examiner must perform a microscopic confirmation of any casings before NIBIN leads can be used for warrants, arrests, or at trial, and a formal report must be requested.

4.14    Prior to applying for the search warrant, Detective Decker had been provided with information that "NIBIN is a screening tool. What you need is to have the lead confirmed by the WSP Crime Lab."

4.15    Detective Decker was on notice of the limitations on the use of NIBIN leads. NIBIN leads instruct the reader that NIBIN leads cannot be used for the establishment of probable

Law Office of Dan N. Fiorito III
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

cause or for any court-related purpose until evidence has been confirmed by a microscopic comparison.

4.16    Detective Decker never sought microscopic verification that the shell casing she submitted to NIBIN matched a gun previously owned by Mr. Wondie.

4.17    NIBIN queries can result in false positive results and microscopic analysis is necessary to eliminate the potential for a false positive.  Hence, a NIBIN lead itself is not a match. Additional microscopic testing must be performed before a detective can represent confirmation exists conclusively that a bullet came from a particular firearm.

4.18    In her affidavit supporting the search warrant, Detective Decker testified that "the test results link conclusively the shell casings collected from the Amarah Riley murder scene on September 19, 2018, and the Gizachew Wondie Smith and Wesson .40 caliber firearm described above." Detective Decker also testified in her affidavit that "Forensic examination has established that shell casings recovered from the scene matched a gun known to be owned by Gizachew Wondie." Both statements are demonstrably false.

4.19    Detective Decker was specifically advised by Washington State Patrol Analyst Samuel Gonzalez that if she wanted to use a NIBIN lead for an arrest or warrant, she needed to contact the Washington State Patrol Crime Lab for a report. These notifications on the use of NIBIN evidence without lab confirmation were provided to Detective Decker on multiple occasions.

4.20    It is undisputable that Detective Decker misrepresented the evidentiary value of the NIBIN lead in her affidavit and used it inappropriately in violation of forensic protocols.  This was the primary evidence Detective Decker used to link Mr. Wondie to the gun she believed was used

**Law Office of DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

to kill Ms. Riley.  Absent this assertion, there would be no basis to establish the probable cause Detective Decker was seeking.

**Detective Decker attempted to tie Mr. Wondie to gang violence without a factual basis.**

4.21    Detective Decker believed that an individual that employed Ms. Riley may have been involved in Ms. Riley's death and that gang violence may have played a part in her death.

4.22    Prior to applying for the warrant, Detective Decker began looking at social media accounts of potential gangs that she believed may have been related to the homicide case. She looked at social media posts of a Somalian music group ("Group A") that law enforcement suspected had gang involvement.

4.23    Detective Decker asked a federal agent familiar with Group A if he had ever heard of Gizachew Wondie.  The agent indicated he had never heard the name.

4.24    Detective Decker also received an organizational chart of Group A from SPD.  Mr. Wondie was not on the organizational chart.  Three different SPD officers indicated they did not know of any association between Mr. Wondie and Group A.  There was no evidence of a connection between Mr. Wondie and Group A or that Mr. Wondie was involved with a gang.  Mr. Wondie is African American.

4.25    Detective Decker concluded that Mr. Wondie was pictured in a Group A social media post from September 29, 2018 "holding what appears to be a semi-automatic firearm." Detective Decker had access to multiple photos of Mr.  Wondie.  Based on her individual review of these photos, and a comparison with a photo from a Group A social media post, she identified a person in the Group A photo as Mr. Wondie.  She submitted the photo with her affidavit indicating Mr. Wondie was the man holding the firearm in the photo.  Detective Decker presented

**LAW OFFICE OF DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

information in her affidavit that Group A was potentially associated with the murder of Ms. Riley. Mr. Wondie is not the man in the photo. Detective Decker failed to indicate that despite checking with law enforcement agents familiar with gangs, nobody had heard of Mr. Wondie.

**Detective Decker falsely testified Mr. Wondie had a propensity for violence.**

4.26    In her affidavit, Detective Decker testified Mr. Wondie had a propensity for violence.

4.27    Detective Decker had no evidence to support her claim that Mr. Wondie had a propensity for violence.

**Detective Decker presented false information under oath that formed the factual basis for the warrant issued by a King County Superior Court Judge.**

4.28    Detective Decker presented her search warrant affidavit to a King County Superior Court Judge swearing under oath that: (1) Forensic examination has established that shell casings recovered from the scene matched a gun known to be owned by Gizachew Wondie; (2) Mr. Wondie had a propensity for violence; and (3) Mr. Wondie was the individual pictured in a social media post of a suspected gang that had potential involvement in the homicide and was holding a semi-automatic firearm.

4.29    All three sworn statements are demonstrably false and unsupported by any evidence. The judge issued the search warrant based on Detective Decker's false testimony.

**Defendants arrest Mr. Wondie without probable cause.**

4.30.    On the morning of December 6, 2018, Mr. Wondie arrived in his vehicle at Seattle Central Community College where he studied computer science.

4.31.    After parking his vehicle, Mr. Wondie was surrounded by SWAT and MCUTF officers with their firearms drawn. The officers banged on the window of the vehicle, told Mr.

Wondie to show his hands and to get out of the car. Mr. Wondie cooperated and was removed from the vehicle. KCSO Deputy George Alvarez was the lead officer of the SWAT team. He has since been terminated as a KCSO Deputy.

4.32    Mr. Alvarez indicated he saw illegal narcotics on Mr. Wondie's person. Mr. Wondie's car was searched and Mr. Wondie was arrested for drug possession.

4.33    Detective Decker was on scene and transported Mr. Wondie to the King County Administration Building in her law enforcement vehicle with MCU Detective John Free..

4.34    In order to receive SWAT assistance to execute the warrant, Detective Decker prepared and signed a checklist that contained questions she needed to answer. In response to a question of whether she believed Mr. Wondie or his associates were likely to have assaultive behavior, Detective Decker answered "No." In response to a question of whether she believed Mr. Wondie to be violent, she answered "No." Detective Decker answered these questions prior to submitting her affidavit in support of the search warrant in which she stated Mr. Wondie had a propensity for violence.

4.35    At no time during their initial contact with Mr. Wondie did SWAT or Detective Decker have probable cause to arrest him.

4.36    The search warrant did not authorize the arrest of Mr. Wondie.

4.37    Deputy Alvarez found drugs on Mr. Wondie's person after he was seized pursuant to service of the warrant.

4.38    Absent the search warrant, Defendants had no basis to remove Mr. Wondie from his car.

4.39　Any evidence of narcotics on alleged to have been seen by Defendants on Mr. Wondie's person or in his car was not observed until after Mr. Wondie was seized.

4.40　Mr. Wondie was questioned by Detective Decker and Detective Free after his arrest during. Detective Decker's search warrant was executed after Mr. Wondie's arrest. The gun was not located pursuant to the search, nor was any evidence connecting Mr. Wondie to Ms. Riley's murder.

4.41　Additional search warrants were sought and approved based on information acquired after Mr. Wondie's seizure. The warrants only related to drugs and had nothing to do with the murder investigation. Detective Decker never found any evidence connecting Mr. Wondie to Ms. Riley's murder.

**The U.S. Attorney ("Government") indicted Mr. Wondie on federal drug and gun charges.**

4.42　On December 19, 2018, Mr. Wondie was indicted in the District Court of the Western District of Washington under cause number CR 18-315 RAJ on federal drug and gun charges. He was arraigned on January 3, 2019. Mr. Wondie pled not guilty to all the charges. In the Complaint, the Government alleged that KCSO investigated Mr. Wondie "for a homicide" and that KCSO believed that Mr. Wondie "was in possession of the murder weapon."

4.43　On January 20, 2021, Mr. Wondie filed a motion to suppress based on his unlawful arrest. The motion was filed under seal due to a protective order in place governing the dissemination of evidence in the case.

4.44　On January 20, 2021, Mr. Wondie filed a motion for a *Franks* Hearing based on Detective Decker's testimony to the judge from whom she sought the warrant. The motion was

filed under seal due to a protective order in place governing the dissemination of evidence in the case.

4.45     Testimony for both motions was heard over four days on June 7, 2021, June 8, 2021, June 21, 2021, and June 22, 2022.  Detective Decker testified on June 21, 2021.

4.46     On July 2, 2021, the Court entered an Order under seal in the criminal matter (DKT #314) entitled "Order on Defendant's *Franks* Motion as to Gizachew Wondie."  *See* Appendix B, incorporated by reference.

4.47     On August 9, 2021, the Court entered an Order under seal in the criminal matter (DKT #321) entitled "Order Granting Sealed Motion to Suppress Evidence of Warrantless Search as to Gizachew Wondie." *See* Appendix C, incorporated by reference.

4.48     On August 13, 2021, the Court entered an Order dismissing the indictment with prejudice.  Mr. Wondie was subjected to nearly three years of federal prosecution and spent most of that time under house arrest unable to work or attend school.

4.49     On September 16, 2021, Mr. Wondie filed a motion to unseal the Court's orders. The Government opposed the motion. On December 2, 2021, the Court granted in part Mr. Wondie's motion to unseal. The Court's Order granting Mr. Wondie's *Franks* Motion, issued on July 2, 2021, read in pertinent part:

> In total, Detective Decker conveyed to Judge Richardson false identification of the defendant with a firearm, characterization of him as having a tendency to be violent, and having possession of a firearm conclusively linked to a homicide. The Court concludes Detective Decker's noted statements in the affidavit can only be reasonably construed as reckless conduct, if not intentional acts. This is particularly so for a 33-year veteran detective working in Major Crimes, investigating homicide, robbery, and felony assault cases. Detective Decker was seeking a search warrant for evidence of the crime of Murder in the First Degree. Her attention to accuracy and truth should have been paramount, but that was not the case in the affidavit she submitted.
> As noted above, an officer presenting a search warrant application has a duty to

LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

produce, in good faith, all relevant information to the reviewing judge. Detective Decker recklessly provided false information and omitted information from the affidavit that resulted in misleading information being communicated to Judge Richardson.

The Court concludes that by removing the falsehoods concerning the firearms evidence, misidentification of the Instagram photograph, misrepresentations about the defendant's tendency to violence, and the other omissions above, the warrant fails for lack of probable cause. The Court therefore GRANTS the defendant's motion.

*See* Appendix B.

4.50     As a matter of law, it has been decided Mr. Wondie was unlawfully arrested by the defendants.  Defendants had a full and fair opportunity to litigate the issues related to the lawfulness of Mr. Wondie's arrest.

4.51     As a matter of law, it has been decided that Detective Decker, as the affiant of the search warrant executed upon Mr. Wondie, knowingly and intentionally, or with reckless disregard for the truth, included multiple false statements in her warrant affidavit; and the false statements were necessary to a finding of probable cause.  Defendants had a full and fair opportunity to litigate the issues related to the *Franks* Motion.

4.52     Neither Detective Decker nor Detective Alvarez were disciplined for their involvement in Mr. Wondie's case and King County took no corrective action as a consequence of their involvement with Mr. Wondie.

**Detective Decker testified at the *Franks* Hearing.**

4.53     Detective Decker testified at the *Franks* hearing that she knew that she needed to submit her NIBIN lead to the WSP Lab for verification to use the evidence, but indicated she thought that requirement only applied to cases going to trial.

4.54     Detective Decker testified in her affidavit that "Forensic examination has established that shell casings recovered from the scene matched a gun known to be owned by

Gizachew Wondie." At the motion hearing, Detective Decker testified this statement was incorrect.

4.55 At the motion hearing, Detective Decker initially testified she had a "mixed understanding" of NIBIN protocols. This conflicted with her own previous actions that demonstrated she knew she needed additional WSP lab testing to testify that a match existed, even for purposes of a warrant application. For example, when she authored an email in 2017, before the Wondie search warrant application, she noted: "We are interested in linking the shell casings from the scene to the pistol and then the pistol to any other unsolved shootings." She clearly knew forensic testing was necessary for a match before providing such information to a judge to get a warrant. After equivocating at the motion, she admitted that her statement about the ballistics match was not true. There was no justification for her to submit false information to the judge indicating the existence of a qualified ballistics match.

4.56 Detective Decker testified at the motion hearing that witnesses are less accurate at identifying people of a different race than their own. She also testified that she had access to a gang identification database known as GETEM which she could have sent a blast out to asking if Mr. Wondie was the person pictured in the Group A picture. She did not use the resource.

4.57 A defense investigator for Mr. Wondie testified he reviewed the photo found in the Group A post and concluded within 90 minutes of research the person pictured in the Group A photo was 100 percent not Mr. Wondie and instead 100 percent another individual he had identified from other social media and news publications.

4.58    During her testimony at the motion hearing, Detective Decker was unable to present any factual basis to support this allegation or to reconcile her previous answer made in the request for SWAT that she did not believe Mr. Wondie was violent.

4.59    Detective Decker testified at the motion hearing that she did not have probable cause to arrest Mr. Wondie.

**King County knew other KCSO detectives had provided false testimony in sworn affidavits but did not discipline the officers.**

4.60    King County detectives have previously been sued under 42 U.S.C for violating a citizen's rights under the Fourth Amendment on a theory of judicial deception.

4.61    In *Wheeler v. Broggi*, C19-1410-JCC-MAT (Western District of Washington), Rodney Wheeler sued King County Detectives Eleanor Broggi and Matthew Olmstead for making false statements and omitting important facts that would have undermined allegations against him.

4.62    Mr. Wheeler contended that the detectives ignored evidence not aligning with their theory of the case and that they withheld exculpatory evidence.

4.63    Mr. Wheeler, also an African-American male, experienced two years of pre-trial detention for a murder charge and unlawful firearm possession charge.  He was acquitted by a jury.

4.64    Mr. Wheeler alleged King County was liable under a ratification theory for condoning and ratifying the behavior of the dishonest detectives.

4.65    Neither Detective Broggi nor Detective Olmstead were disciplined for their involvement with the investigation of Mr. Wheeler.

4.66    On or about April 15, 2021, Defendant King County agreed to pay $500,000.00 to settle Mr. Wheeler's claims. The settlement came within a month after U.S. Magistrate Judge Mary Alice Theiler found there was evidence to support Mr. Wheeler's claims of malicious prosecution,

violation of his due process and "judicial deception," stemming from allegations the detectives filed misleading or incomplete sworn statements to obtain a search warrant and, later, criminal charges against Wheeler. *See* Appendix D incorporated by reference. The settlement was reached before the Court issued its order granting Mr. Wondie's *Franks* Motion on July 2, 2021.

4.67 When Detective Decker was found as a matter of law to have acted recklessly, if not intentionally, for presenting false testimony to obtain a search warrant, King County had already settled the claims against detectives Broggi and Olmstead for judicial deception. Despite this pattern of misconduct, King County officials took no steps to reprimand or discharge the involved detectives. King County has widespread practice or custom where acquiring warrants through judicial deception remains an acceptable practice within the King County Sheriff's Department.

4.68 Detective Decker also facilitated Mr. Wondie's arrest with the help of the King County Swat Team and Deputy Alvarez when there was no probable cause to arrest him. The fact that this arrest was done without question or sanction from King County demonstrates that it is an acceptable practice within the King County Sheriff's Department to use the SWAT team to make unlawful arrest and intimidate citizens.

**Detective Decker testified at her deposition that it was custom and policy within KCSO to use NIBIN leads to establish conclusive forensic matches for purposes of probable cause.**

4.69 At her deposition on December 15, 2022, Detective Decker testified that it was a common practice for KCSO detectives to use NIBIN leads as evidence of a conclusive forensic match even though no microscopic confirmation had been completed.

4.70    Detective Decker testified that it was common practice for NIBIN leads to be used for probable cause by KCSO detectives in search warrant affidavits without requesting or receiving microscopic confirmation.

4.71    Detective Decker testified that as a result of the Wondie criminal case and Judge Jones' Franks *Order*, a change was effectuated within the KCSO.  After the *Franks* Order, she testified that "detectives were now on alert and going to be very careful with how they move forward with NIBIN evidence."

4.72    Detective Decker testified that due to Judge Jones *Franks* Order, "detectives were now on guard and wanted to make sure that that did not happen to them, what had happened to me," regarding NIBIN evidence.

4.73    Detective Decker testified that KCSO detectives would utilize NIBIN leads as probable cause evidence in search warrant affidavits without seeking microscopic confirmation and did so until Judge Jones issued the *Franks* Order.

4.74    Detective Decker testified she believes Mr. Wondie still has "complicity" in Ms. Riley's murder.  When questioned why she thought that Mr. Wondie still had complicity four years after the murder, King County objected on grounds of investigative privilege.  As of the filing of this Second Amended Complaint, Plaintiff's counsel is attempting to compel Detective Decker to respond to the question. Detective Decker's deposition transcript is attached as Appendix E.  The testimony regarding NIBIN evidence referenced in this Second Amended Complaint is found in pages 195 through 210.  The testimony regarding Detective Decker's belief that Mr. Wondie has complicity in Ms. Riley's murder is found in pages 171-178.

**LAW OFFICE OF DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

**Public Disclosure Request Seeking NIBIN evidence.**

4.75    On August 22, 2022, Plaintiff's counsel requested through the KCSO Public Disclosure Unit "All search warrants prepared between January 1, 2017 and August 2, 2022 that reference "NIBIN" or National Integrated Ballistics Information Network."

4.76    On January 6, 2023, KCSO responded:

The KCSO Public Disclosure Unit has located the following records responsive to your request:

Approximately 500 emails were reviewed and the 1 responsive email containing a warrant had been uploaded to the records center as installment 1. I anticipate providing the next installment of records to you by February 6, 2023. Thank you.

4.77    The search warrant affidavit is attached as Appendix F. It states in pertinent part: "On 09/25/18 I spoke with SA Sam Gonzalez who works with the NIBIN system at the Washington State Patrol Crime Lab. SA Gonzalez told me that the 9mm shell casing recovered after the shooting of Maldonado's occupied vehicle and the 9mm shell casing later recovered at the shooting at Michael's house were a match in the IBIS system. This information shows that the gun fired in the drive-by shooting and the gun Patrick was seen firing at Michael's house were the same gun."

4.78    On information and belief, the statement is demonstrably false absent microscopic confirmation.

4.79    On information and belief, it is expected Mr. Gonzalez will testify that he would not confirm a "match" over the phone without performing a microscopic analysis and creating a report.

4.80    On information and belief, this affidavit is evidence of KCSO's widespread practice of misrepresenting NIBIN evidence and corroborates Detective Decker's testimony that KCSO detectives committed judicial deception repeatedly by misrepresenting NIBIN leads as confirmed

matches to establish probable cause for search warrants.

## V.     CAUSE OF ACTION – CLAIMS PURSUANT to 42 U.S.C. §1983 and §1988

5.1     Paragraphs 1.1 through 4.80 are realleged as if fully set forth herein.

5.2     At all material times hereto, all Defendants were acting under color of state law. At all material times hereto, Plaintiff had a constitutionally protected liberty interest in life, personal security, bodily integrity, being free from harmful physical contact or emotional injury, freedom to move or travel, and had constitutionally protected rights to equal protection, as well as to procedural and substantive due process of law as provided by the 4th and 14th Amendment to the Constitution of the United States.

5.3     The acts and omissions of the Defendant King County, by and through their agents and representatives identified above constitute a pervasive pattern of recklessness, deliberate indifference, gross negligence and/or wanton/willful misconduct in regard to the rights of Plaintiff.

5.4     The individual defendants named above acted in a manner that deprived Plaintiff of constitutionally protected liberty interests in life, personal security, bodily integrity, movement, travel and deprived Plaintiff of equal protection and procedural and substantive due process of law. Said individual defendants further acted in a manner that was deliberately indifferent, wanton and willful and which reflected a reckless disregard for Plaintiff's well-being.

5.5     The Plaintiff was unlawfully seized without probable cause by the defendants.

5.6     The Plaintiff was subjected to an unlawful search and seizure based on the judicial deception of Detective Decker.

5.7    Plaintiff was injured by the unconstitutional policies, customs and procedures implemented and followed by the King County Sheriff's Department in violation of his civil rights as provided by the 4th and 14th Amendments to the Constitution of the United States and King County is liable under 42 U.S.C. § 1983 and§ 1988.

5.8    Defendants King County and King County Sheriff's Department knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiffs rights, failed to instruct, supervise, train, control and/or discipline on a continuing basis Defendant officers and other officers in their duty.

5.9    Defendant King County ratified the action of Detective Decker because it failed to discipline her after a federal district court judge ruled that she acted recklessly, if not intentionally, when providing false testimony to the court in support of a search warrant. She is at least the third King County detective sued for judicial deception. Defendant King County recognized the alleged wrongdoing of Detectives Broggi and Olmstead by paying a $500,000.00 settlement to resolve claims against them less than a month after a Magistrate Judge recommended that there were sufficient facts alleged in the Plaintiff's Complaint to support a claim of judicial deception.

5.10    Defendant King County's widespread acceptance of judicial deception through its failure to sanction or address such misconduct was the moving force behind Detective Decker's intentional decision to mislead a King County Superior Court judge by submitting false testimony related to ballistics evidence to establish probable cause. Absent ratification of judicial deception, Mr. Wondie would not have been deprived of his constitutional rights.

5.11    KCSO maintained a widespread practice of judicial deception by allowing and encouraging detectives to deviate from accepted NIBIN protocols in order to secure warrants that

**LAW OFFICE OF DAN N. FIORITO III**
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

would not otherwise be obtainable but for the deviation and misrepresentations that were permitted by widespread practice and internal training.

5.12    Detective Decker testified at the *Franks* Hearing that she had received training from Washington State Patrol about the appropriate use of NIBIN leads to establish probable cause. She testified, that she did not follow the training and instead represented that the firearm used in the Riley murder was conclusively linked to a gun belonging to Mr. Wondie. King County did not discipline her for her actions. If Washington State Patrol had trained Detective Decker trained regarding NIBIN evidence, King County failed to supervise, control and/or discipline its detectives, including Detective Decker, for not adhering to the training. Detective Decker testified that she thought that there was a different pretrial standard for using NIBIN evidence, when in fact she knew that was not the case, and King County did nothing to address this gross misconduct. King County did not train its detectives on proper NIBIN protocols. This establishes a ratification by King County of the misuse of NIBIN evidence.

5.13    As testified to by Detective Decker, it was "common practice" for detectives to use NIBIN leads as evidence of a forensic match between a bullet and a gun to establish probable cause in search warrants without requesting or receiving microscopic confirmation. This common practice did not allegedly change until after Judge Jones issued his *Franks* Order.

5.14    This widespread and common practice lasted for several years, and its detectives were trained, as demonstrated by Detective Decker's testimony, to abide by it. King County ratified the misuse of NIBIN evidence.

5.15    Regardless of ratification, KCSO clearly had a widespread custom or practice of misusing NIBIN evidence in violation of Mr. Wondie's rights as well as that of other citizens.

5.16. Detective Decker requested assistance from SWAT to execute the search warrant. The anticipated detainment turned into an arrest without probable cause. The arrest occurred outside of Seattle Community College during school hours and Mr. Wondie was contacted at gunpoint. There was never probable cause to arrest Mr. Wondie and there was no basis to believe he was violent or otherwise dangerous. Even assuming the search warrant had not been procured through judicial deception, there was no basis for King County Swat or Deputy Alvarez to arrest Mr. Wondie or for Mr. Wondie to be transported to a government office for questioning by Detective Decker. The fact that this arrest occurred without probable cause and without oversight from, or corrective action by, King County, demonstrates King County's ratification of the use of SWAT resources to scare individuals before unlawfully arresting them and coercing confessions. But for this policy inferred from the action of the Defendants in this case, Mr. Wondie would never been arrested at gunpoint by a SWAT team and coerced into disclosing evidence. Absent probable cause to arrest, the SWAT Team, George Alvarez, and Detective Decker worked in concert to take Mr. Wondie into custody at gunpoint, to unlawfully confine him, and to use the full force of governmental resources to compel him to talk.

5.17 Defendants King County and King County Sheriff's Department had the power to prevent the commission of the aforesaid wrongs, could have done so by reasonable diligence, but failed to do so with deliberate indifference and callous disregard of the rights of Plaintiff.

5.18 As a direct and proximate cause of defendants' violation of Plaintiffs rights, Plaintiff has suffered economic and emotional damages in amounts to be proven at trial.

5.19 Defendants' malicious, intentional and / or reckless disregard for Plaintiffs clearly established constitutional rights warrants an award of punitive damages.

LAW OFFICE OF DAN N. FIORITO III
2470 WESTLAKE AVE N, SUITE 201
SEATTLE, WASHINGTON 98109
PHONE: (206) 299-1582 FAX 206-770-7590
EMAIL:DAN@DANFIORITO.COM

5.20    By reason of all the foregoing allegations, Plaintiff is entitled to an award of damages against the defendants, jointly and severally, for his injuries and damages including all general and special damages and including punitive damages under federal common law and 42 U.S.C. § 1983 and for their costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

(a) For judgments in such amounts as shall be proven at the time of trial including general and specific damages.

(b) For punitive damages;

(b) For pre-judgment interest at the statutory rate on all items of special damages including, without limitation, expenses of medical care and treatment and wage loss.

(c) For an award of attorney's fees and costs incurred herein.

(d) For such other and further relief as the Court deems just and equitable.

Signed this 12th day of January, 2023

THE LAW OFFICE OF DAN N. FIORITO III
Attorney for Plaintiff

By:     *s/ Dan N. Fiorito III*
        DAN N. FIORITO III
        WSBA #34009
        The Law Office of Dan N. Fiorito III
        2470 Westlake Ave N., Suite 201
        Seattle, WA 98109
        Telephone: (206) 299-1582
        Fax: (206) 770-7590
        Email: dan@danfiorito.com